# United States District Court
## Western District of Virginia
### Harrisonburg Division

|  |  |  |
|---|---|---|
| **JAMIE LYNN KIBLER**, | ) ) ) ) ) | Civil No.: 5:10cv00059 |
| *Plaintiff*, | ) |  |
| v. | ) ) | REPORT AND RECOMENDATION |
| **MICHAEL ASTRUE**, Commissioner of Social Security, | ) ) ) ) | By: Hon. James G. Welsh |
| *Defendant,* | ) ) | U. S. Magistrate Judge |

This civil action instituted by the plaintiff, Jamie Lynn Kibler, challenges the final administrative decision of the Commissioner of the Social Security Administration ("the agency") denying her claim of entitlement of disability insurance benefits ("DIB") under Title II of the Social Security Act, as amended ("the Act"), 42 U.S.C. §§ 416 and 423. Jurisdiction of the court is pursuant to 42 U.S.C. § 405(g).

In her application[1] the plaintiff alleges a September 29, 2004 disability onset date due to "[her] body swell[ing] really bad," pain in her knees, arms and "especially [her] back," and getting tired "very fast."(R.8,59,115-116,117-124,141,179.) Her application was denied initially, on reconsideration, and again following an administrative hearing. (R.8-15,16-52,53-58,73-75,80-82,84-89,96-106.) Although the administrative law judge ("ALJ") found in his March 13,

---

[1] The plaintiff also filed an application for Supplemental Security Income ("SSI") under Title XVI of the Act; due to the amount of her husband's income, this application was disapproved, and this determination was not disputed by the plaintiff. (R.59-60,61-64,65-72,125-127.)

2008 written decision that the plaintiff lacked the residual functional ability to perform the demands any of her past unskilled, light work,[2] he concluded that she retained the functional ability to perform a limited range of work at a sedentary exertional level,[3] which could accommodate her functional limitations.

After the ALJ's issuance of his adverse hearing decision, the plaintiff's requested Appeals Council review (R.4); her request was denied (R.1-3), and the ALJ's written decision now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981.

The Commissioner has filed a certified copy of the Administrative Record ("R"), which includes the evidentiary basis for the findings and conclusions set forth in the Commissioner's final decision. By an order of referral entered on November 15, 2010 this case is before the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

In the perfunctory brief filed by her counsel, the plaintiff advances three *ipse dixit* arguments. First, it is asserted that the plaintiff's "impairment or combination of impairments

---

[2] "**Light work**" is defined in 20 C.F.R. § 404.1567(b) to involve lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category generally requires a good deal of walking or standing, [*9] or when it involves sitting most of the time generally involve some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities. A job may also be considered light work if it requires "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday" with intermittent sitting. Social Security Ruling ("SSR") 83-10.

[3] "**Sedentary work**" is defined in 20 C.F.R. § 404.1567(a) to involve lifting no more than 10 pounds at a time and occasionally carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of standing and walking is often required in carrying-out job duties, and jobs are classified as sedentary if walking and standing are required occasionally and other sedentary criteria are met.

meets or medically equals the criteria of [a listed] impairment;" second, it is alleged that the ALJ's assessment of the plaintiff's credibility concerning the extent of her lupus-related functional limitations was not based on substantial evidence; and third, it is claimed that the ALJ "abused his discretion" by failing to adopt vocational testimony given in response to a hypothetical question which assumed full credence to the plaintiff's testimony about her functional limitations. The Commissioner's reply has addressed each of the alleged decisional errors in detail.

## I. Summary Recommendation

Based on a thorough review of the administrative record and for the reasons outlined hereinafter, each of the plaintiff's contentions is totally without merit. It is, therefore, recommended that the plaintiff's motion for summary judgment be denied and the Commissioner's motion for summary judgment be granted.

## II. Standard of Review

The court's review in this case is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the statutory conditions for entitlement to a period of DIB. "Under the . . . Act, [a reviewing court] must uphold the factual findings of the [Commissioner], if they are supported by substantial evidence and were reached through application of the correct legal standard."*Mastro v. Apfel*, 270 F.3$^d$ 171, 176 (4$^{th}$Cir. 2001) (quoting *Craig v. Chater*, 76 F.3$^d$ 585, 589 (4$^{th}$Cir.

1996)). This standard of review is more deferential than de novo. "It consists of more than a mere scintilla of evidence but may be somewhat less than preponderance."*Mastro*, 270 F.3d at 176 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]."*Id*. (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The Commissioner's conclusions of law are, however, not subject to the same deferential standard and are subject to plenary review. *See Island Creek Coal Company v. Compton,* 211 F.3d 203, 208 (4th Cir. 2000); 42 U.S.C. § 405(g).

### III. ALJ Findings and Analysis

#### A.

Without referencing any specific listing and without citing anything in the record to support the assertion, the plaintiff's primary argument on appeal is that her impairments meet or medically equal the criteria of a listed impairment. Contrary to this contention, the ALJ's decision demonstrates without contradiction that the plaintiff's evidence failed to establish that any of her medical conditions met all of the requirements of a potentially applicable listing. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) ("It is not unreasonable to require the claimant, who is in a better position to provide information about [her] own medical condition, to do so."); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (Each of the agency's listed impairments is defined in terms of several specific medical signs, symptoms, or laboratory test results," and "[f]or a

4

claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria.")

The ALJ's decisions show that he reviewed the plaintiff's medical information, her daily activities and her hearing testimony. (R.10-14.) After doing so, he then specifically assessed her medical conditions and concluded her osteoporosis of the left hip, her systemic lupus erythematosus ("lupus"), and her eye disorder were *severe* impairments within the meaning of the agency's regulations. (R.11.) *See* 20 C.F.R. § 404.1521. Relevant to these diagnosed conditions, the ALJ then ascertained that none met in the entirety the medical criteria necessary to meet or equal a listed impairment.[4] (*Id.*)

In making this determination the ALJ appropriately identified the relevant listed impairments, including listing 1.02 (*major joint dysfunction*), listings 2.02 – 2.04 (*impairment of visual acuity, peripheral visual fields and loss of visual efficiency*) and listing 14.02 (*systemic lupus erythematosus*), and he compared the criteria of these listings with the evidence of the plaintiff's symptoms. *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).

*Inter alia,* as the basis for his determination that the plaintiff's impairments neither met nor equaled listing 1.02, the ALJ noted that she was ambulatory without the use of any assistive

---

[4] The Listing of Impairments ("the listings") is in appendix 1 of subpart P of part 404 of 20 C.F.R. It describes for each of the major body systems impairments that the agency considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. 20 C.F.R. § 404.1525 and § 416.925. ). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530, (1990).

device (R.31-33,39-41,138, 161,164,324,344), and for that reason the plaintiff's left hip condition did not meet the listing's "inability to ambulate effectively"[5] criterion. (R.11.)

Evaluating the plaintiff's loss of visual impairment, under listings 2.02, 2.03 and 2.04 the ALJ noted that her field of vision and visual acuity were within normal limits (*see* R.29-30,221-226) and did not meet the specific functional loss of visual acuity, peripheral vision and visual efficiency necessary to satisfy any of the listed disorders of vision.[6]

Similarly, on the basis of his review of the evidence, the ALJ concluded that the plaintiff's lupus symptoms did not meet or equal the level of severity necessary to satisfy listing 14.02.[7] As he noted, she retained the ability to walk effectively; she retained the ability to perform fine and gross movements effectively (R.33); she had no significant loss of visual acuity; she did not have an extensive skin lesion problem (R.426,433,607); she was able to

---

[5] In pertinent part, listing 1.00(B)(2)(b) defines the "[i]nability to ambulate effectively [to mean] an extreme limitation of the ability to walk: *i.e*., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities, Ineffective ambulation is defined generally as having insufficient lower extremity functioning (*see* 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities."

[6] Listing 2.02 (loss of visual acuity) requires that the remaining vision in the better eye after best correction is 20/200 or less. Listing 2.03 requires contraction of the visual field in the better eye with (a) the widest diameter subtending an angle around the point of fixation no greater than 20 degrees; (b) a mean deviation of -22 or worse, determined by automated static threshold perimetry as described in Listing 2.00(A)(6)(a)(v); or (c) a visual field efficiency of 20 percent or less as determined by kinetic perimetry. Listing 2.04 (loss of visual efficiency) requires visual efficiency of the better eye of 20 percent or less after best correction. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 2.02-2.04. *Aytch v. Astrue*, 686 F.Supp.2d 590, 600 (EDNC, 2008).

[7] " Listing 14.02 provides that (A) the SLE could involve two or more organs/body systems (joint, muscle, ocular, respiratory, cardiovascular, digestive, renal, hematologic, skin, neurological, or mental), one of which is involved to at least a moderate level of severity, and at least two of the following symptoms: severe fatigue, fever, malaise, or involuntary weight loss. Alternatively, the claimant could demonstrate (B) repeated manifestations of SLE with at least two of the above-listed symptoms as well as one of the following: limitation of activities of daily living, maintaining social function, or completing tasks in a timely fashion due to deficiencies in concentration, persistence, or pace. 20 C.F.R. Subpart P Appendix 1 Listing 14.02." *Brown v. Astrue* 210 U.S. Lexis 104857 *19 (NDTx, 2010).

maintain social function (R.162-163,191); she was able independently to perform her daily living activities (R.35-36,158-162,187-191); and her ability to complete tasks in a timely manner was not markedly limited (R.36,192).

The non-listing level severity of the plaintiff lupus disorder is also evident from other evidence in the record. The condition does not involve either her kidneys or her bladder. (R.616-617,623.) It has caused no heart or chest abnormality. (R.33-34,138,249,263,270-271,768.) It did not complicate her successful pregnancy and C-section delivery in 2005. (R.310-311.) Any relation of her lupus disorder to her hip problem was limited to its affect on her ability to sit for long periods. (R.31-33,39-41.) It has caused no involuntary weight loss (R.19-20,29), and it has resulted in no medically directed limitations on her activities. (R.31.)

**B.**

Finding that the plaintiff's medical condition could be reasonably expected to cause body swelling, fatigue and pain in her knees, arms and back as the plaintiff contends, the ALJ next considered whether her statements concerning the intensity, persistence and limiting effects of these symptoms were or were not fully credible. Although the plaintiff contends that this assessment was not based on substantial evidence, the record more than adequately establishes the contrary.

Consistent with *Craig v. Chater*, 76 F.3$^d$ 585 (4th Cir. 1996), the ALJ utilized the required two-prong test for evaluating pain and other subjective symptoms. He found that objective medical evidence established the existence of impairments resulting from anatomical or

physiological abnormalities which could reasonably be expected to produce pain or other alleged subjective symptoms. (R.12.), *See Craig* at 595. Having found that the plaintiff's evidence satisfied both prongs of *Craig*, he then evaluated the "intensity and persistence [of her subjective symptoms] and the extent to which [they affect] her ability to work." *Id.*

In making this evaluation, the ALJ considered not only the plaintiff's statements about her various subjective symptoms, but also her medical history, the residual functional capacity assessments in the record, the character of her symptoms, the scope of her daily living activities, the type of treatment she had received, any measures she had taken to lessen her symptoms, and her response to treatment. (R.12.)

Just in terms of her response to treatment for lupus symptoms, the limited records of Wael Jarjour, M.D., her treating physician for this condition, demonstrate no disabling symptomology. Since 2001 when the lupus diagnosis was made, Dr. Jarjour has routinely described the plaintiff as "doing well" or "doing relatively well," and on multiple occasions has found her condition to be "in remission." (R.259,260,275-276,286-287,433,426,475,501,544-545,593-594,607-609,615.)

Similarly, the scope of the plaintiff's daily activities suggests an inconsistency with her testimony concerning the intensity and persistence of her alleged symptoms. For example, she is able to care for her three year old daughter on a daily basis (R.20,36-37,45-46,158,162); she is able to drive without restrictions (R.21); she is able to go to the store twice each week (R.161); she walks daily (R.161), and she engages in regular social activities (163).

8

As the ALJ also noted in his decision, both state agency reviewers concluded that the plaintiff was not disabled despite her contention to the contrary. (R.13.) *Inter alia,* these reviewers based their conclusion on the absence of any significantly limited daily activities, the absence of any heart or lung impairment, the absence of any loss of muscle strength, and the absence of any medical statement suggesting any limitation on the plaintiff's activities. (R.228-233,235-236.)

In considering the plaintiff's contention that the ALJ improperly discounted her testimony, it merits being noted that credibility choices are inherently within ALJ's province as the finder of fact. *Secrist v. Weinberger*, 538 F.2$^d$ 1054, 1056-57 (4$^{th}$Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence, and that it is the claimant who bears the risk of non-persuasion."); *Hays v. Sullivan*, 907 F.2$^d$1453, 1456 (4$^{th}$Cir. 1990) (credibility choices are within the province of the Commissioner as the finder of fact).

In summary, the ALJ's partial discount of the plaintiff's statements about her symptoms, because he deemed them to be exaggerated "to the extent they [were] inconsistent with [his] residual functional assessment" (R.12), is more than adequately supported by substantial evidence in the record.

## C.

Given the ALJ's full consideration and partial discount of the plaintiff's testimony concerning the debilitating extent of her subjective symptoms, the plaintiff's claim that the ALJ

based his non-disability decision on vocational testimony given in response to a defective hypothetical question clearly lacks merit. The hypothetical question posed by the ALJ included as exertional limitations the lifting of no more than ten pounds occasionally and only limited postural and standing/walking abilities, and non-exertionally it took into account no concentrated exposure to hazards, a "moderate[ly]" limited ability to maintain concentration and attention and a "moderate" limitation in the ability to maintain pace due to pain, fatigue, medication effects and "perhaps some emotional overlay." (R.14-15,48-49.) Each of these restrictions reflected the plaintiff's limitations as supported by substantial evidence in the record. And in response, the vocational witness concluded that an individual with such limitations and the plaintiff's vocational profile could perform a number of sedentary jobs, including representative examples such as inspector or general clerical worker, (R.14-15,49-50.) Thus, the plaintiff's third claim of error also lacks merit.

## D.

The recommendation that the Commissioner's final decision be affirmed does not suggest that the plaintiff is totally free of pain and other subjective discomfort or does not have very real health issues. The objective medical record, however, simply fails to demonstrate that her condition during the relevant period was of sufficient severity to result in total disability from all forms of substantial gainful employment. The decision in this case for the court to make is "not whether the [plaintiff] is disabled, but whether the ALJ's finding of no disability is supported by substantial evidence." *Johnson v. Barnhart*, 434 F.3$^d$650, 653 (4$^{th}$Cir. 2005) (citing *Craig v. Chater*, 76 F.3$^d$ at 589). Likewise, it is for the province of the Commissioner, not the court, to resolve conflicts in the evidence. *Hays v. Sullivan,* 907 F.2$^d$1453, 1456 (4$^{th}$Cir. 1990).

## IV. Proposed Findings of Fact

As supplemented by the above summary and analysis and on the basis of a careful and thorough examination of the full administrative record, the undersigned submits the following formal findings, conclusions and recommendations:

1. The Commissioner's final decision is in all respects supported by substantial evidence;

2. The ALJ gave proper consideration to the objective and subjective evidence in making his adjudication of the plaintiff's claim;

3. The plaintiff's impairment (or combination of impairments) does not meet or medically equal listing 1.02;

4. The plaintiff's impairment (or combination of impairments) does not meet or medically equal listings 2.02, 2.03 or 2.04;

5. The plaintiff's impairment (or combination of impairments) does not meet or medically equal listing 14.02;

6. The ALJ's assessment of the plaintiff's credibility was based on substantial evidence;

7. The ALJ did not abuse his discretion by declining to adopt vocational testimony given in response to a hypothetical question which assumed full credence to the plaintiff's testimony about her functional limitations;

8. Substantial evidence in the record supports the finding that through the decision date the plaintiff was not disabled within the meaning of the Act;

9. The plaintiff has not met her burden of proving a disabling condition on or before the date of the ALJ's written decision;

10. All facets of the Commissioner's final decision in this case are supported by substantial evidence, and it should be affirmed.

## V. Recommended Disposition

For the foregoing reasons, it is RECOMMENDED that an order be entered AFFIRMING the final decision of the Commissioner, GRANTING JUDGMENT to the defendant, and DISMISSING this case from the docket of the court.

The clerk is directed to transmit the record in this case immediately to the presiding United States district judge and to transmit a copy of this Report and Recommendation to all counsel of record.

## VI. Notice to the Parties

Both sides are reminded that pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, they are entitled to note objections, if any they may have, to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by the undersigned to which an objection is not specifically made within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitals or findings as well as to the conclusions reached by the undersigned may be construed by any reviewing court as a waiver of such objections.

DATED: 22nd day of June 2011.

/s/ *James G. Welsh*
United States Magistrate Judge